IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **GARY W. HEARTY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Civil No. 11-838-CJP** |
| ) | |
| **MICHAEL J. ASTRUE**, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Gary W. Hearty seeks review of the final decision of the Commissioner of Social Security denying him Disability Insurance Benefits (DIB).[1]

**Procedural History**

Mr. Hearty applied for benefits in February, 2009, alleging disability beginning on August 20, 2000. (Tr. 61). He was represented by an attorney at the administrative level (Tr. 22), but is pro se in this Court. His application was denied initially and on reconsideration. The alleged date of onset was later amended to June 11, 2007. (Tr. 78). After holding a hearing, ALJ Mitchell F. Stevens denied the application for benefits in a decision dated May 19, 2010. (Tr. 13-20). Plaintiff's request for review was denied by the Appeals Council, and the decision of the ALJ became the final agency decision. (Tr. 6).

Administrative remedies have been exhausted and a timely complaint was filed in this

---

[1] This case was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 10.

Court.

## Issues Raised by Plaintiff

Mr. Hearty filed a brief at Doc. 21 in which he describes some of his medical history and states that physical labor causes him shortness of breath, which usually brings on chest pains.

## Applicable Legal Standards

To qualify for DIB a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).** "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. §§ 404.1572.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. It must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. ***Schroeter v. Sullivan***, 977 F.2d 391, 393 (7th Cir. 1992); see also, **20 C.F.R. §§ 404.1520(b-f).**

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**. Thus, this Court must determine not whether Mr. Hearty was, in fact, disabled within the relevant time period, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. **See, Books v. Chater, 91 F.3d 972, 977-78 (7th Cir. 1996)** (citing ***Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)**). This Court uses the Supreme Court's definition of substantial evidence, i.e, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richardson v. Perales*, 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997)**. However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, ***Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

### The Decision of the ALJ

ALJ Stevens followed the five-step analytical framework described above. He noted first that the alleged onset date was amended to June 11, 2007, which was Mr. Hearty's 50th birthday. He determined that Mr. Hearty had not been engaged in substantial gainful activity since the alleged onset date, and that he had severe impairments of coronary artery disease, a reported history of seizures and chronic pulmonary obstructive disease. He further determined that these impairments do not meet or equal a listed impairment. He also noted that Mr. Hearty

3

was obese.  The ALJ found that Mr. Hearty had the residual functional capacity to perform work at the light exertional level with some postural and environmental limitations.  Using the Grids, the ALJ found that Mr. Hearty was not disabled as of the date he was last insured, i.e., March 31, 2008.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.  The following is a summary of the most pertinent evidence.

1. **Agency Forms**

Mr. Hearty was born on June 11, 1957.  He was last insured for DIB as of March 31, 2008.  (Tr. 72).

In a Disability Report, plaintiff said that he stopped working on September 15, 2004, due to a breathing condition, heart condition and epilepsy.  (Tr. 80).  He had previously worked as a union painter and lawn care foreman.  (Tr. 81).

He completed the 11th grade.  (Tr. 85).

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing on February 2, 2010. (Tr. 245).  The date of onset was amended to June 11, 2007.  (Tr. 248).

 Mr. Hearty testified that he had a heart attack in 2000 and a second heart attack in 2009. He had cardiac catheterization after each.  (Tr. 259-260).  He testified that he gets chest pains if he does "pretty much anything physical."  (Tr. 250).  He said he has "constant" shortness of breath, which developed after the first heart attack.  (Tr. 250-251).  He takes Spiriva, which makes it a little easier to breathe.  He smokes a pack of cigarettes a day.  (Tr. 251).  He acknowledged that his doctor has told him to quit smoking.

Mr. Hearty said that he also has a seizure disorder and that he had a seizure about 3 months earlier. (Tr. 252). He quit taking medication for seizures "quite a few years" earlier. (Tr. 259).

He said that he has pain in his low back and his right hip. (Tr. 253, 255). Mr. Hearty takes Vicodin for pain, with "not much" side effects. (Tr. 256).

Plaintiff testified that he does not do much during the day. He "kind of piddle[s]" around the house. He can sit for 20 to 30 minutes, walk for 15 minutes, and stand for 15 minutes. (Tr. 256-258).

**3.    Medical Records Through Date Last Insured**

The transcript contains records from primary care physician Dr. Todd Hammond. The earliest visit was on May 27, 2003, when plaintiff complained of a sharp pain in his low back. He also had pain on coughing, but not on inspiration. He had no chest pain or shortness of breath. The impression was muscular pain. He weighed 224 pounds. (Tr. 194-195).

In September, 2004, Dr. Hammond again noted that he denied chest pain or shortness of breath. (Tr. 192).

On November 17, 2006, plaintiff complained of pain in his left elbow and shoulder. Dr. Hammond wrote, "No specific trauma, but does fairly physical job at work." (Tr. 190). The impression was tennis elbow. (Tr. 191).

Plaintiff saw his cardiologist, Dr. David Morton, on June 25, 2007. Dr. Morton had last seen him in 2000, when cardiac catheterization showed minimal coronary artery disease. Plaintiff was 5'11" and weighed 225 pounds. He was smoking 1 and ½ packs of cigarettes a day. He was noted to be "semi retired." He complained of feeling fatigued with periodic numbness or aching in his left shoulder and upper left chest. This was associated with feeling a little short of

breath.  On exam, he had normal respiratory effort with a few scattered rhonchi but no moist rales or wheezes.  His cardiac rate and rhythm were normal with an S4 gallop and no S3 gallop, rub or murmur.  Dr. Morton felt that his symptoms were somewhat atypical for anginal chest pain.  He ordered a stress test.  (Tr. 138-140).

A stress test was done on July 5, 2007.  The sensitivity of the test was decreased due to Mr. Hearty's inability to achieve the target heart rate.  The test was stopped due to chest pain, shortness of breath and fatigue.  Nuclear imaging showed a small area of distal anterior apical ischemia.  Left ventricular systolic function was within normal limits.  (Tr. 143).

Plaintiff next saw Dr. Hammond on February 15, 2008.  He told Dr. Hammond that he had started having seizures again 6 to 8 months earlier, and that he was having shortness of breath when doing anything physical.  He said that his cardiologist (Dr. Morton) had done a stress test and wanted to repeat his cardiac catheterization.  Dr. Hammond advised him to see a neurologist for his seizures and to follow up with the catheterization.  (Tr. 187-189).

  **4.**  **Medical Records After Date Last Insured**

Mr. Hearty was admitted to St. Anthony's Medical Center in St. Louis, Missouri, on April 4, 2008, after he presented to the emergency room with a history of multiple episodes of chest pains over the past couple of weeks.  It was noted that he was working for himself and had previously been a commercial painter.  A diagnostic cardiac catheterization showed only mild coronary artery disease and normal left ventricular function.  He was discharged the same day.  The discharge diagnoses were chest pain of uncertain etiology and mild coronary artery disease.  (Tr. 132-133).

On April 5, 2008, Dr. Morton's nurse called Mr. Hearty to go over the post-catheterization instructions and to tell him that he did not need to follow up with Dr. Morton.

(Tr. 137).

In August, 2008, Mr. Hearty complained to Dr. Hammond of increasing shortness of breath. Dr. Hammond did spirometric testing and diagnosed "SOB emphysema." He prescribed Spiriva. (Tr. 179-182). In October, 2008, Dr. Hammond noted that his emphysema was better with Spiriva. (Tr. 176).

On November 19, 2008, Dr. Morton noted that Mr. Hearty's cardiac status was stable. Dr. Morton referred him back to Dr. Hammond's care. (Tr. 136).

In February, 2009, Mr. Hearty came to see Dr. Hammond with "disability papers for heart and lung." Dr. Hammond wrote that he should be evaluated by a pulmonologist and a cardiologist. (Tr. 167-169).

Mr. Hearty saw Dr. Robert Barrack, an orthopedic surgeon, on August 17, 2009, with a history of right hip pain which had begun after his catheterization in April, 2008. He said that he was a painter but was off work secondary to this pain. (Tr. 206). On August 24, 2009, an MRI showed that Mr. Hearty had a large acetabular labral tear and moderate to severe osteoarthritis in the right hip. (Tr. 221-222). Dr. Barrack's office informed plaintiff that he would be a candidate for a hip replacement when his symptoms got bad enough. Mr. Hearty said he would call the office "when he feels it is necessary." (Tr. 210).

The last medical record is from March, 2010, about 2 years after plaintiff's last insured date. He saw Dr. Hammond, who noted that he had not had chest pain since he had been seen at St. Anthony's.[2] He got relief of his hip pain with Vidocin. His physical examination was

---

[2] Mr. Hearty says in his brief that he had a "3rd heart attack in 2010" and had another catheterization at St. Anthony's. It is unclear whether Dr. Hammond's note refers to this episode.

essentially normal.  His medications were continued, and he was told to return in 6 months.  (Tr. 243-244).

     **5.**     **RFC Assessment**

A state agency physician, Dr. Gotway, reviewed medical records and completed a Physical RFC Assessment in May, 2009.  The assessment was as of the date last insured, March 31, 2008.  He concluded that Mr. Hearty was capable of work at the light level (occasional lifting of 20 pounds, frequent lifting of 10 pounds, stand and/or walk for 6 hours, sit for 6 hours, unlimited pushing and/or pulling), limited to only occasional climbing of ladders, ropes and scaffolds, and no concentrated exposure to fumes, odors, gases, etc., or to hazards such as machinery and heights.  (Tr. 157-164).

A second state agency physician reviewed the evidence and  agreed with this assessment in July, 2009.  (Tr. 197-199).

A consultative physical exam was performed in March, 2010.  (Tr. 230-241).  Plaintiff's chief complaint was right hip pain, which he said began about 1 and ½ years prior.  This examination is of no relevance, since it pertains to complaints which arose after the date last insured.

## Analysis

Mr. Hearty has not identified any specific error in the ALJ's decision.  Rather, after noting that he had heart attacks in 2000 and 2008, he states that he started to have pain in his hip around August of 2008.  He says that pain extends down his leg and into his hip, and that staying in one position for any length of time causes extreme pain.  He also says that he had a third attack in 2010, and that any physical labor causes shortness of breath which brings on chest pains.  See, Doc. 21.

The application at issue was for DIB only. Mr. Hearty was insured for DIB only through March 31, 2008. In a DIB case, a claimant must establish that he was disabled as of the date last insured. ***Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997)**. It is not sufficient to show that the impairment was present as of the date last insured; rather plaintiff must show that the impairment was severe enough to be disabling as of the relevant date. ***Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011)**. Plaintiff has the burden on this issue. ***Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).**

It is evident from a review of the medical records that plaintiff did not have a disabling impairment as of March 31, 2008. The Court notes that his contention that he had a heart attack in 2008 is not borne out by the medical records. The medical records do not say that he had a heart attack. After cardiac catheterization in April, 2008, the diagnoses were chest pain of uncertain etiology and mild coronary artery disease. (Tr. 132-133). The cardiologist did not even feel that he needed to follow-up. (Tr. 137). As the ALJ noted, the medical records do not document any serious breathing problems before the relevant date, or any treatment for a seizure disorder. And, as plaintiff acknowledges, his hip problem did not manifest itself until after March 31, 2008.

In short, whatever Mr. Hearty's current condition might be, the record does not contain evidence establishing that he was disabled as of March 31, 2008.

The Court has undertaken a general review of the ALJ's decision, and finds that it is supported by substantial evidence and does not contain any errors of law. ALJ Stevens properly followed the five step sequential analysis. He adequately discussed the evidence and built the required "logical bridge" from the evidence to his conclusions. See, ***Vilano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009), and cases cited therein.** The ALJ considered the factors specified in

20 C.F.R.§404.1529(c) with regard to plaintiff's credibility.  The ALJ correctly noted that none of plaintiff's treating doctors opined that he was unable to do light work before the relevant date.  He accepted the state agency physicians' assessment of plaintiff's RFC.   This was proper.  "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."  SSR 96-6p, at 2.   The ALJ was required by 20 C.F.R. §404.1527(f) to consider the state agency physicians' findings of fact about the nature and severity of the claimant's impairment as opinions of non-examining physicians.  Lastly, the ALJ did not err in using the Grids (20 C.F.R. Pt. 404, Subpt. P, App. 2) to determine whether Mr. Hearty was disabled, since his nonexertional limitations do not significantly affect the range of work he can do at the light exertional level.  See, SSR 83-14.

## Conclusion

After careful review of the record as a whole, the Court finds that the ALJ committed no errors of law, and that the findings of the ALJ are supported by substantial evidence.

The final decision of the Commissioner of Social Security denying the application of Gary W. Hearty for Disability Insurance Benefits is **AFFIRMED.**

**The Clerk of Court is directed to enter judgment in favor of defendant.**

**IT IS SO ORDERED.**

**DATED:  May 1, 2012.**

s/ Clifford J. Proud
**CLIFFORD J. PROUD**
**United States Magistrate Judge**